Goretta VAN METER, Appellant,

v.

Charles Edward SMITH, Appellee.

No. 1997–CA–003047–MR.

Court of Appeals of Kentucky.

Feb. 18, 2000.

570

B. Alan Simpson Pierce, Simpson & Shadoan, Bowling Green, Kentucky, for Appellant.

Natty Bumppo, Brownsville, Kentucky, for Appellee.

BEFORE: COMBS, HUDDLESTON, and KNOPF, Judges.

*OPINION*

KNOPF, Judge:

This is a domestic relations matter in which the former wife, Goretta Van Meter, appeals from a July 8, 1997, order of the Edmonson Circuit Court. The trial court awarded the former husband, Charles Smith, a refund of nearly $11,000.00 for child support he was held to have twice paid. The court also modified in Smith's favor the medical expense provisions of the parties' child support arrangement. Van Meter maintains that the trial court misconstrued controlling law in arriving at both of these results. We are not persuaded that the child support reimburse-

ment was improper. We agree with Van Meter, however, that the trial court's findings do not establish the requisite foundation for modifying the decree's health care provisions. To that extent, accordingly, we vacate the July 8, 1997, order and remand for additional proceedings.[1]

The parties do not dispute the pertinent facts. In March 1987, their marriage of some fifteen years was dissolved by decree. The marriage had produced one child, a daughter, Keegan, who at the time of the dissolution was not yet a year old. Smith was ordered to pay child support of $100.00 per month. That order remained in effect until May 1991, when Smith's support obligation was increased to $300.00 per month. In September 1991, the decree was further modified by the incorporation of medical expense provisions. Smith was ordered to provide medical insurance for Keegan, and with one exception the parties were ordered to divide equally any uninsured medical or dental expenses. The exception was counseling expenses for Keegen, which were assigned to the party who incurred them. In November 1995, the court again modified the decree by ordering the child and both parents to undergo psychological evaluation and counseling. The order imposing counseling does not say how the counseling expenses were to be divided, but presumably Smith would have borne at least a portion of them.

In late 1993 or early 1994, Smith became disabled. He was awarded workers' compensation benefits pursuant to KRS Chapter 342; he also received disability benefits under his employer's pension plan. The pension plan guaranteed Smith an income of approximately $3,000.00 per month by paying him the difference be-

tween that amount and the total of his other sources of income. The plan apparently included a coordination of benefits clause whereby Smith was required either to apply for social security disability benefits or to have his pension benefits reduced according to the plan's estimate of what his social security benefit would be. Smith duly applied for social security, and, while he awaited a ruling, his pension benefits helped him to fulfill his child support obligation. In December 1996, the Social Security Administration approved Smith's disability claim and awarded him benefits (SSD) effective as of January 1994. It paid him his accrued benefits in a lump sum. It also awarded dependant's benefits to Keegan on Smith's account (about $650.00 per month) and paid to Van Meter Keegan's accrued benefits, which ultimately totaled about $21,000.00. Smith notified the pension plan's administrator of his social security award, and the plan thereupon demanded that Smith repay the pension benefits to the extent of the social security back awards, including the back award to Keegan.

His social security status having been determined, Smith moved the trial court to modify his support obligation in light thereof and to order Van Meter to reimburse him for the child support he had paid during the pendency of his social security claim. An appropriate amount of Keegan's back award was placed into escrow, and the court referred the matter to a domestic relations commissioner. The commissioner recommended, and the court agreed, that Smith was entitled to recover the nearly $11,000.00 he had paid in child support since January 1994, that he was entitled to credit Keegan's monthly SSD benefits against his ongoing child support

---

1. Smith has moved to dismiss Van Meter's appeal as untimely. He concedes that within ten days of the judgment Van Meter filed a CR 59.05 motion and that she filed her appeal within thirty days of the ruling on that motion. Her appeal would thus appear to be timely. Smith maintains, however, that Van Meter's CR 59 motion was not filed in good

faith and so should not be given the usual effect of tolling the time for appeal. As our discussion will make clear, we find Van Meter's attack upon the judgment, which is essentially the same attack she raised in her CR 59.05 motion, to be far from meritless or lacking in good faith. Smith's motion to dismiss is therefore denied.

572

obligation, and that Van Meter should thenceforth be responsible for "the child's entire cost of health and psychiatric care—including expenses of court-ordered counseling[.]"

It is from this order that Van Meter appeals. She does not dispute that Keegan's SSD benefits may be applied prospectively toward Smith's continuing child support liability. She maintains, however, that, by reimbursing Smith for support already paid, the trial court modified the support order retrospectively, contrary to KRS 403.213(1). She also maintains that the trial court's modification of Smith's liability for health care did not comply with KRS 403.211(7) and (8). We are satisfied that the trial court did not retrospectively modify the child support provisions of the order and that its awarding Smith reimbursement for twice-paid support was appropriate in the circumstances. We agree with Van Meter, however, that any modification of the order, including its provisions for health care, requires more thorough findings than those so far made. Accordingly, we must vacate that portion of the order and remand for additional proceedings.

█ As are most other aspects of domestic relations law, the establishment, modification, and enforcement of child support are prescribed in their general contours by statute and are largely left, within the statutory parameters, to the sound discretion of the trial court. KRS 403.211—KRS 403.213; *Wilhoit v. Wilhoit,* Ky., 521 S.W.2d 512 (1975). This discretion is far from unlimited. *Price v. Price,* Ky., 912 S.W.2d 44 (1995); *Keplinger v. Keplinger,* Ky.App., 839 S.W.2d 566 (1992). But generally, as long as the trial court gives due consideration to the parties' financial circumstances and the child's needs, and either conforms to the statutory prescriptions or adequately justifies deviating therefrom, this Court will not disturb its rulings. *Bradley v. Bradley,* Ky., 473 S.W.2d 117 (1971).

The trial court found that

[t]he payment of $10,800 by the respondent from January of 1994 through December of 1996 constituted a double payment of child support and a windfall to the petitioner, and the respondent should recover $10,800 from the petitioner or from the account at the Bank of Edmonson County, which was created by an award for the benefit, care and support of the child duplicating payment by the respondent.

In conjunction with this finding and the reimbursement order, the court cited *Miller v. Miller,* Ky.App., 929 S.W.2d 202 (1996). In that case, a divorced father with child support obligations had applied for social security disability benefits and during the application period had fallen into child support arrears. When his SSD claim was approved, he moved to have the benefits paid directly to his child credited toward his liability. This Court held that he was entitled to a credit for any regular monthly dependent's benefits his child had or would receive, but that further findings were necessary to determine whether the lump-sum award for the application period should, to any extent, be applied toward the arrearage.

█ Van Meter concedes that, under *Miller,* Keegan's monthly SSD benefit may be credited toward Smith's support obligation for that month. *Miller* does not, however, Van Meter maintains, support the further conclusion that Smith is entitled to reimbursement for child support already paid and spent. She insists that "[t]he fact that the United States Government paid Keegan Smith, the parties['] infant child, has no bearing upon the issues before this Court. That payment, from the United States taxpayers, did not come from the Appellee. Therefore, he did not 'overpay.'" If Smith's reimbursement is based, not on an overpayment, but, retrospectively, on a change in Keegan's circumstances, then the trial court's order amounts to a retroactive modification of Smith's support obligation, a result Van

Meter correctly notes would be contrary to Kentucky law. *Guthrie v. Guthrie*, Ky., 429 S.W.2d 32 (1968).

Van Meter's argument raises a point that merits clarification. If Keegan's social security benefit is her income, as it plainly is, then how can Smith be given credit for it? Not so long ago, at least two courts held that he could not. *See Casper v. Casper*, 593 N.W.2d 709, 712 (Minn.App. 1999) (discussing *In re Marriage of Haynes*, 343 N.W.2d 679 (Minn.App.1984)) ("a child's receipt of social security benefits from the obligor's account '[did] not constitute payment[ ] from that parent.' "), *rev'd, Holmberg v. Holmberg*, 578 N.W.2d 817 (Minn.App.1998). *See also In re Marriage of Cowan*, 279 Mont. 491, 928 P.2d 214 (1996) (discussing a similar case history). The more common view, however, is that SSD benefits are like the income received from an insurance policy or a trust. If Smith had transferred assets to a trust that paid income to Keegan, although the income would be hers, Smith clearly would be entitled to child support credit for it. Similarly Smith's purchase of an insurance policy that paid benefits to Keegan would be another indirect transfer of income from Smith to Keegan for which Smith would be entitled to credit. Smith's contributions to the social security system and his employer's contributions on his behalf are an analogous transfer of assets. Although there are numerous differences between the social security system and either an insurance policy or a private trust, the similarities warrant the conclusion that Keegan's SSD benefits come, at least indirectly, from Smith. *Board v. Board*, Ky., 690 S.W.2d 380 (1985). The reimbursement ordered in this case is thus genuinely a reimbursement and not a retrospective modification of Smith's support liability.

■ Does this fact alone entitle Smith to a reimbursement? Van Meter says no because child support is owed not just in a particular amount, but also with a particular regularity. Smith owed Keegan regular support during his social security application period. To his credit he provided that support, but, in a very real sense, the social security back payment now cannot replace or substitute for the amounts due then. The back payment is simply extra now, and "extra" support payments are commonly deemed to be gifts. *Newman v. Newman*, 451 N.W.2d 843 (Iowa 1990); *Children and Youth Services of Allegheny County v. Chorgo*, 341 Pa.Super. 512, 491 A.2d 1374 (1985).

In different circumstances, especially if an arrearage unrelated to Smith's disability were involved, this reasoning might be compelling, but it omits a key consideration in this case. As discussed above, Smith's income during the social security application period consisted in significant part of pension/disability benefits provided by his employer. Those benefits must be repaid. They are similar in that regard to public assistance benefits sometimes provided while social security applications are pending. Such benefits, however, are routinely recouped from social security awards before they are paid to recipients, including recipients of dependency awards. *Baez v. Bane*, 89 N.Y.2d 1, 651 N.Y.S.2d 338, 674 N.E.2d 268 (1996).

■ They are similar as well to other "coordinated benefits." Benefit coordination is an attempt by insurance companies and government agencies to lower the cost of benefit programs and policies by eliminating double awards. Benefits are said to be coordinated when receipt of a second award for a single claim gives rise in the payer of the first award to a right to reimbursement. *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293 (7th Cir.1993). Such coordinated benefits provisions are common features of employee pension policies. *Porter v. Continental Casualty Company*, 156 Ariz. 488, 753 P.2d 178 (1988); *Murzyn v. Amoco Corporation*, 925 F.Supp. 594 (N.D.Ind.1995). Although the parties here did not develop this aspect of the case (the bearing on this situation, if any, of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.*, is

an interesting question for another day), there is no dispute that Smith's pension benefits are subject to repayment. Smith, therefore, will not reap a windfall from reimbursement of the child support he paid during the pendency of his SSD application. On the contrary, if he is not reimbursed, he will have paid that amount twice, once to Keegan and now again to his pension plan. In a similar case, the Court of Appeals of Ohio recently upheld the reimbursement of pension benefits from a dependent's social security award. *Fruchtnicht v. Fruchtnicht,* 122 Ohio App.3d 492, 702 N.E.2d 145 (1997). We concur with the Ohio court. *See also In re Marriage of Cowan, supra* (collecting cases and arriving at a result in harmony with ours although on facts slightly different). The interim pension benefits in this case served Keegan and Van Meter's interest as well as Smith's. Repayment of a portion of those benefits from Keegan's lump-sum SSD award is neither alleged nor shown to be unduly detrimental to Keegan or Van Meter. It will prevent an inequity to Smith, and will promote the efficient operation of the employer's coordinated benefits program. In these circumstances, we are not persuaded that the trial court abused its discretion by so ordering.

We noted above that the trial court did not modify Smith's support obligation when it ordered Keegan and Van Meter to reimburse him. The order provides, by necessary implication, that Smith's support obligation remains $300.00 per month.[2] The court did, however, modify the decree's health care provisions: It shifted the entire burden of health insurance and other health related expenses to Van Meter. In doing so, the court cited KRS 403.211(7)(a), which mandates that the costs of health care be specifically apportioned in the child support order. As noted by Van Meter, however, KRS 403.211(8) further mandates that "[t]he cost of ex-

traordinary medical expenses [uninsured expenses in excess of $100 per child per calendar year] shall be allocated between the parties in proportion to their adjusted gross incomes." The modification of child support provisions, moreover, including health care provisions, is also governed by KRS 403.213(1). This statute provides in part that

> [t]he provisions of any decree respecting child support may be modified only as to installments accruing subsequent to the filing of the motion for modification and only upon a showing of a material change in circumstances that is substantial and continuing.

■ In explaining the standard of our review, we observed that this state's domestic relations law is founded upon general statutory guidelines and presumptions within which the trial court has considerable discretion. The trial court has discretion in many instances, moreover, to deviate from the statutory parameters, but only if it makes findings clearly justifying the deviation. *Cf.* KRS 403.211(2) (providing for deviation from the Child Support Guidelines of KRS 403.212). *Rainwater v. Williams,* Ky. App. 930 S.W.2d 405 (1996). The trial court has deviated here from the statutory requirement that extraordinary medical expenses be allocated in proportion to the parties' incomes, and it has done so without expressly justifying the deviation. The court also modified the health care provisions of the decree without discussing how substantial changes in the parties' circumstances have made that modification necessary. The obvious changes in Smith's circumstances and those of Van Meter and Keegan make us unwilling to say that the court's modification of the support decree was an abuse of discretion, but at the same time we are unable to affirm that modification in the

---

**2.** In their briefs, the parties both suggest that Smith's obligation has been increased to $657.00 per month, the amount of Keegan's

monthly SSD benefit. The order does not say this, and, in the absence of adequate findings as discussed in the text, it could not.

absence of the mandatory findings. *Rasnick v. Rasnick*, Ky.App., 982 S.W.2d 218 (1998). *Cf. Board, supra* (noting that a non-custodial parent's receipt of social security benefits might well justify a modification of the support order, but only following and in light of the required procedures), *and Fruchtnicht, supra* (discussing Ohio's similar rules for the modification of a support order). We are obliged, therefore, to vacate the portion of the July 8, 1997, order that shifts all of Keegan's health care costs to Van Meter, and to remand the matter for additional proceedings consistent with this opinion.

In sum, we reject Van Meter's assertion that the trial court retroactively modified her child support decree. In ordering Van Meter to reimburse Smith from Keegan's back award of social security benefits, the court has only required her to acknowledge the prior receipt of that amount of support and to cooperate with Smith's pension program in a manner the program reasonably expects. This was not an abuse of the trial court's discretion. Nor are we willing to say that the trial court abused its discretion by ordering Van Meter to assume sole responsibility for Keegan's health care. Keegan's SSD benefits and Smith's disability may well justify such a modification of the support decree. Because KRS 403.211(8) plainly intends, however, that the parties will, as a general rule, share extraordinary health care costs in proportion to their incomes, the trial court may not deviate from that intention without expressly justifying the deviation in its findings and conclusions. The court's order fails to satisfy this requirement. It also fails to satisfy the more general requirement that any modification of a support decree be expressly justified in relation to substantial and lasting changes in the parties' circumstances. For these reasons, we affirm the July 8, 1997, order of the Edmonson Circuit Court in all respects except its assignment of health care responsibilities to Van Meter. We vacate that portion of the order and remand for additional proceedings. Further, for the reasons stated in footnote 1, Smith's motion to dismiss is denied.

ALL CONCUR.