Allison JONES, Appellant,

v.

Matthew Jones HAMMOND, Appellee.

No. 2009–CA–000546–MR.

Court of Appeals of Kentucky.

Aug. 20, 2010.

Rehearing Denied Nov. 17, 2010.

---

3. Footnote omitted.

John H. Helmers, Jr., Troy DeMuth, Louisville, KY, for Appellant.

Patricia Van Houten, Louisville, KY, for Appellee.

Before TAYLOR, Chief Judge; CLAYTON and THOMPSON, Judges.

*OPINION*

CLAYTON, Judge:

Allison Jones (formerly Hammond) appeals from an order of the Jefferson Family Court entered on October 1, 2008, which terminated Matthew Jones Hammond's child support obligation. For the reasons stated below, we affirm in part, reverse in part, and remand.

Jones and Hammond were married on September 11, 1999, and divorced on March 28, 2006. While married, they had two children, Christopher (d.o.b. 11/21/2000) and Catherine (d.o.b. 10/11/2003). On April 5, 2006, the family court entered an order in which Hammond agreed to pay Jones $872.90 per month or $203.00 per week in child support.

In March 2008, Hammond filed a motion to terminate his child support obligation based on any or all of the following reasons: the independent financial resources of the children, the parenting schedule, and Jones's financial resources. Further, he also requested that the court impute income to Jones. After Hammond had filed this motion, Jones then filed a motion requesting an increase in child support.

The family court held a hearing on September 3, 2008. At the hearing, Hammond testified that he was employed as director of the Mechanical Contractors Association of Kentucky. His annual salary at the time he filed the motion to reduce or terminate child support was approximately $67,000. Since then, he had received a raise in salary and now has an annual salary of approximately $73,892.

Jones is a clinical psychologist with a doctorate degree. At the time of the marriage, she was working and continued working until 2001. Initially, Jones stopped working because of the birth of her first child. At the time of the dissolution Jones was and remains a stay-at-home mom. Because of medical problems associated with that birth, Jones had to have a complete hysterectomy in 2007. As a result of this surgery, the doctors advised Jones to never lift over ten pounds.

In addition, according to Jones's testimony, she suffers from many medical problems including gastroparesis, interstitial cystitis, restless leg syndrome, and scoliosis. Based on these medical conditions, Jones has had multiple invasive procedures and takes regular prescriptions. The symptoms of the gastroparesis include frequent vomiting, diarrhea, constant nausea, plus frequent urination and bladder complications. Jones supplemented the record with copies of her medical records and documentation of her illness and a list of eighteen prescribed drugs. One drug requires administration through bladder catheterization.

Based on the debilitating nature of the symptoms, Jones contends that these medical problems prevent her from being employed. Moreover, because of her illness and the possibility that she may never work again, Jones applied for social security disability. Her initial claim was denied but she is appealing the decision.

Despite her inability to procure employment, Jones has income, which derives from family gifts and trusts. In 2007 and 2008, she received $24,000 in gift income from her parents and grandmother. In addition, her 2007 tax return shows that besides the gift income, she reported taxable interest of $12,488, ordinary dividends of $4,493, and capital gains of $2,076. When these amounts are added to her gift income, Jones's gross income appears to be at least $43,057 for 2007.

Furthermore, the children have also received distributions from trust accounts as well as ordinary gifts from relatives. Jones's uncontested testimony was that the trust income is used for the children's private school tuition and ancillary expenses like books and school fees. And she testified that any additional income from these sources is reinvested and added to the principal of the respective funds. Jones stated that the income from the children's trust funds is never spent privately on her behalf.

Regarding Hammond's testimony maintaining that he had parenting time with the children every weekend during 2007, Jones testified that, according to her written notes, she had the children on several weekends during that year. Contrary to Hammond's assertion about his parenting time, in which he claimed that he had the children forty-three percent (43%) of the time, her compilation of the parenting time showed that she had the children sixty-four percent (64%) of the time and Hammond had them thirty-six percent (36%) of the time.

On October 1, 2008, the family court terminated Hammond's child support obligation and overruled Jones's motion for an increase in child support. The family court made several findings in this order including that Jones had not met the burden of proof to show that she was disabled, that the children had significant independent financial resources, that Hammond had physical custody of the children forty-three percent (43%) of the time, that Jones had significant financial resources, and that Jones was voluntarily unemployed. Based on its findings, the family court's order terminated any child support obligation for Hammond.

Subsequently, Jones and Hammond filed motions to alter, amend or vacate the decision or in the alternative to make additional findings based on the record. In the October 3, 2008 motion, Jones stated that the order to terminate child support was a violation of Kentucky common law and public policy. Furthermore, she maintained that the findings are inconsistent with the facts of record from the hearing. Jones appeals from both the October 1, 2008 and the March 13, 2009 orders.

██ Within statutory parameters, the establishment, modification, and enforcement of child support obligations are left to the sound discretion of the trial court. *Van Meter v. Smith,* 14 S.W.3d 569 (Ky. App.2000). However, this discretion is not unlimited. *Keplinger v. Keplinger,* 839 S.W.2d 566 (Ky.App.1992). It must be fair, reasonable, and supported by sound legal principles. *Downing v. Downing,* 45 S.W.3d 449 (Ky.App.2001).

██ For the purposes of the standard of review, in reviewing family court cases, we acknowledge that a family court judge has extremely broad discretion in ascer-

taining the reliability of the evidence presented. Moreover, a reviewing Court is not permitted to substitute its judgment for that of the family court unless its findings are clearly erroneous. *Sherfey v. Sherfey,* 74 S.W.3d 777, 782 (Ky.App.2002). Factual findings are not clearly erroneous if they are supported by substantial evidence. *Black Motor Co. v. Greene,* 385 S.W.2d 954, 956 (Ky.1964). "The test for substantiality of evidence is whether when taken alone, or in the light of all the evidence, it has sufficient probative value to induce conviction in the minds of reasonable men." *Janakakis–Kostun v. Janakakis,* 6 S.W.3d 843, 852 (Ky.App.1999). Furthermore, due regard shall be given to the family court judge's opportunity to judge the credibility of the witnesses. Kentucky Rules of Civil Procedure (CR) 52.01. Lastly, we review questions of law de novo. *Revenue Cabinet v. Comcast Cablevision of the South,* 147 S.W.3d 743 (Ky.App.2003). Keeping these standards in mind, we turn our attention to the case herein.

The issues on appeal are whether it is appropriate to terminate the child support of a non-custodial parent (as designated in the child support formula), whether the evidence was sufficient to impute income based on unemployment, and whether the facts of this case allow for deviation from the child support guidelines. Jones argues that the trial court erred when it determined that she was voluntarily unemployed, when it decided that the trust income and the percentage of parenting time allowed it to deviate from the child support guidelines, when it considered gifts from the grandparents as assets or income for Jones and the children, and when it terminated Hammond's child support obligation.

Hammond counters that the trial court had ample reason to determine that Jones failed to meet her burden of proof to establish her disability, that the family court correctly imputed income to Jones, and that the children's independent financial resources and the timesharing arrangement properly allowed for a deviation from the child support guidelines.

Under Kentucky Revised Statutes (KRS) 403.213(1), "[t]he provisions of any decree respecting child support may be modified ... only upon a showing of a material change in circumstances that is substantial and continuing." The statute later describes "material change" as an "[a]pplication of the Kentucky child support guidelines to the circumstances of the parties at the time of the filing of a motion or petition for modification of the child support order which results in equal to or greater than a fifteen percent (15%) change in the amount of support due per month[.]" KRS 403.213(2). Significantly, neither the family court nor Hammond ever addressed, in particular, the change in circumstance which allowed for a modification, that is, a termination of Hammond's child support obligation. Since the entry of the 2006 agreed order concerning child support, Hammond still has the same job, Jones is still unemployed, and the parenting schedule is still the same.

Looking at the evidence presented and the family court's order, we surmise that the only possible "material" change in circumstances might be the $30,000 in annual income imputed to Jones. But, even if the Court uses the family court computation for child support, which includes the aforementioned income imputed to Jones, Hammond's statutory child support obligation is then presumptively $778.54. The difference between original monthly child support obligation of $872.90 and $778.54 does not, pursuant to KRS 403.213(2), result in a fifteen percent change in the child support obligation, and therefore, is not rebuttably presumed to be substantial

change in circumstance. Thus, the family court, without deviation from the guidelines, did not meet the statutory definition for a material change in circumstances. Thus, the family court must find, in writing, statutory factors allowing for a deviation from the guidelines to modify child support.

■ Before moving on to address the family court's holding that allowed for a deviation from the child support guidelines, we will examine the issue of voluntary unemployment or underemployment. KRS 403.212(2)(d) states:

If a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, except that a determination of potential income shall not be made for a parent who is physically or mentally incapacitated or is caring for a very young child, age three (3) or younger, for whom the parents owe a joint legal responsibility. Potential income shall be determined based upon employment potential and probable earnings level based on the obligor's or obligee's recent work history, occupational qualifications, and prevailing job opportunities and earnings levels in the community. A court may find a parent to be voluntarily unemployed or underemployed without finding that the parent intended to avoid or reduce the child support obligation.

First, we note that Jones has been unemployed for a significant period of time, including during her marriage. During the marriage and after the birth of the children, she cared for them full-time. Apparently, this decision was a mutual decision by the then married couple. Additionally, Hammond was aware of her medical problems. So, we must address whether Jones is voluntarily unemployed. Jones established by testimony, written and spoken, and by medical records, that she suffers from several illnesses that cause vomiting, diarrhea, nausea, and frequent urination. Management of these illness has required eight surgeries, with more likely, and numerous medical prescriptions.

In contrast, we observe that Jones is a clinical psychologist, which is not a physically demanding occupation. Testimony was also given that prior to the birth of her first child in 2001, she worked for the social security administration doing evaluations, for which she earned roughly $20,000.00 per year. Moreover, at that time, Jones was also performing child custody evaluations, for which she earned about $200.00 to $300.00 per month. At the hearing, she testified that she had worked since she was fifteen years old at a variety of jobs. Finally, we note that, notwithstanding her medical problems, Jones was able to participate in the court proceedings.

It has long been the law in Kentucky that the family court has broad discretion in determining the appropriate amount of child support owed by a parent. Accordingly, an appellate court will not disturb its findings unless the family court abused its discretion. An abuse of discretion has occurred if the family court's "decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Downing v. Downing*, 45 S.W.3d 449, 454 (Ky. App.2001) (footnote omitted).

Here, we deem that the family court's decision was not "arbitrary, unreasonable, unfair, or unsupported by sound legal principles," and hence, it did not abuse its discretion by finding that Jones is voluntarily unemployed. Although, Jones's application for security disability may be considered a piece of the analysis, it is not dispositive on this issue. While the Court acknowledges the difficulties encountered

by Jones with regard to her medical problems, we do not believe that she provided sufficient evidence that she is completely unable to work in her profession. Regardless, the family court has the discretion to weigh the testimony and make that decision.

Next, we will consider the family court's findings that based on KRS 403.211(3)(d) and (g), grounds existed for the family court to deviate from the child support guidelines because application of the guidelines would have been "unjust or inappropriate." The family court based its decision on the disparity in available resources between the parties, the independent financial resources of the parties' children, and the timesharing arrangement.

The statutory scheme allowing for deviation from the child support guidelines is found in KRS 403.211, which provides, in part:

(3) A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption and allow for an appropriate adjustment of the guideline award if based upon one (1) or more of the following criteria:

. . . .

(d) The independent financial resources, if any, of the child or children;

. . . .

(g) Any similar factor of an extraordinary nature specifically identified by the court which would make application of the guidelines inappropriate.

To begin with, we will discuss the independent financial resources of the children. KRS 403.211(d). The family court explained in its findings of fact that the evidence showed that the children had independent financial resources. The family court referred to the fact that in both 2007

and 2008, the children had received gift income from Jones's relatives. At the hearing, this information was explicated in Respondent's Exhibit 8, which was entered into the record. The document is entitled "Documentation of Allison Jones's, Christopher Hammond's and Catherine Hammond's Gift Income for 2008." The document shows that each child received $12,000 from Jones's parents and $12,000 from Jones's grandmother in 2007 and 2008. Jones testified at the hearing, however, that the children would no longer be receiving gift income from her parents due to the effect of the economy on their assets. Flowing from the children's trust funds, was interest income, which in 2007 was $7,447.00. Jones explained that the children's trust funds were used for educational and school-related expenses. And contributions from any source were always re-invested in the trust fund principal of each child's respective trust fund. Yet, she confirmed that the trust funds had been used to pay for summer activities and nanny services.

In analyzing the children's independent resources, it appears to us that the family court did not address the fact that the primary use of the children's income from the trust fund was to pay for the tuition at a private school. Further, Hammond never contradicted the use of the funds for education or objected to its use for the children's education. In fact, Hammond testified at the hearing that he made a donation to the children's school funds, which indicates some approval as to the children's school.

In addition, while we recognize that statutory authority does allow for courts to deviate from the guidelines based on the independent resources of a child or children, we have reservations about whether the legislature so intended such deviation in a case where the children's joint annual

income for the year discussed, 2007, was $7,447.00 and used primarily for educational purposes. Hammond cites to *Rainwater v. Williams*, 930 S.W.2d 896(sic) [405] (Ky.App.1996), wherein our Court determined that a court may deviate from the guidelines where application would be "unjust or inappropriate." But we see a considerable difference between the facts of *Rainwater* and the situation here. In *Rainwater*, the child received a structured settlement, to be paid through his mother, the legal guardian, which amounted to the cumulative sum of $13,381,000.00. Further, the parents' income was such that his father (Rainwater) earned $1,800.00 per month and the child's mother was unemployed. Thus, not only were the child's independent resources extremely large, but also the child's parents had limited resources. Finally, we observe that the Court's holding therein did not terminate a child support obligation but only remanded it for a determination of child support outside the guidelines after a consideration of the child's independent resources.

■ Clearly, a decision on whether to deviate from the guidelines is within the trial court's discretion. *Redmon v. Redmon*, 823 S.W.2d 463 (Ky.App.1992). Furthermore, according to KRS 403.211, the family court is allowed to deviate from the table amount of child support when it finds that "application of the guidelines would be unjust or inappropriate[.]" Specifically, KRS 403.211(3)(d) provides that the financial resources of the child can be considered in deviating from the guidelines. In this case, we do not find that the family court abused its discretion in determining that the children's independent financial resources permit a deviation from the child support guidelines.

But, we also note that, in taking into account the children's independent income, the family court must adjust each parent's child support obligation. As Justice Noble explained in her concurrence in result only in *Artrip v. Noe*, 311 S.W.3d 229, 235 (Ky.2010):

The trial court is allowed to deviate from the table amount of child support when it finds that "application of the guidelines would be unjust or inappropriate," KRS 403.211(3), or when the adjusted parental gross income exceeds "the uppermost levels of the guideline table." KRS 403.212(5). It is the *total amount of support* (table amount) from which the court can deviate, not the individual support obligation of one parent.

In application, this means that if the table amount for child support is $600 from both parents, the trial court can consider the child's independent income to reduce the table amount to $500, for example, if that would be just and appropriate. Then each parent would still pay his or her proportionate share of that amount based on his or her share of the combined gross parental income. In this manner, the court can make an equitable reduction that relieves both parents of some amount of table support which is offset by the children's independent income to some degree.

In essence, the family court must deviate from the child support guidelines by adjusting each parent's child support obligation.

■ In addition to the children's trust and gift income, the family court discussed other resources that Jones and they received. Jones had a credit card in her mother's name for which she was allowed to make purchases of clothing for the children. Jones described these purchases as "grandmother gifts," and said that she was limited in the use of the credit card to $500 or less per year. And, since the divorce, Jones's family has paid for travel and some

of the children's medical expenses, which were not covered by insurance. With regard to gifts from grandparents, we are not persuaded that such items were ever intended to be part of the child support calculus. Jones and her mother provided the billing records for the credit card, which revealed no unusual purchases. We are of the opinion that typical, normal, and expected gifts from grandparents do not abrogate a parent's duty to provide for children.

■ Next, we discuss the family court's holding that a second criteria justified deviation from the child support guidelines. As noted above, the family court also held that, under KRS 403.211(3)(g), which allows for deviation from the guidelines for "[a]ny similar factor of an extraordinary nature[,]" facts existed to support a deviation from the guidelines. Citing *Downey v. Rogers*, 847 S.W.2d 63 (Ky.App.1993), the family court reasoned that the amount of time that children reside with a parent may allow for deviation from the child support guidelines. The family court opined that whether to deviate is based on the actual sharing of expenses and relatively equal parenting time.

In *Downey*, this Court held that KRS 403.211(3)(g) allows the trial court to consider the period of time the children reside with each parent in determining child support as a basis for deviating from the guidelines. *Downey*, 847 S.W.2d at 64–65. The Court, however, said that, while expenses for daily, necessary items are substantially reduced for the parent without possession of the children, many of these expenses continue throughout the month, regardless of where the children reside. Consequently, although the Court in *Downey* allowed that the time spent with each parent could be used as a basis for deviation, it rejected the contention that no support should automatically be ordered where the parties have equal physical possession of the children. *Id.*

We agree with Jones that the family court failed to make sufficient findings to justify its deviation from the guidelines on this issue. The family court described the parenting schedule in detail. But, the court then inferred from this schedule that the parties have substantially equal parenting time. And the family court also suggested that because Hammond buys the children clothes to wear during his parenting time that a substantial shift of expenses between the parents occurred. The family court went on to say that such a shift had not been contemplated by the guidelines. It is our belief, however, that these findings, standing alone, are not sufficient to warrant such a significant deviation from the child support guidelines.

First, we observe that the child sharing arrangement is the same one established in 2006. The mediated agreement, which was entered on January 20, 2006, states as follows:

> Custody and Parenting Time: The parties shall share the joint care, custody, and control of their infant children. The Respondent [Hammond] shall have parenting time with the children each weekend from Friday at 7:00 p.m. until Monday morning when he will deliver the children to school. The Respondent shall have the children every Tuesday, Wednesday, or Thursday evening, depending on his schedule. The Petitioner [Jones] shall have the children on all other days under the regular visitation schedule. The Respondent shall provide the Petitioner with a copy of his work schedule as soon as he receives it, so that the parties will have advance notice as to which weekends the Respondent will not be available to take the children.... The Petitioner shall be enti-

tled to have four (4) weekends per year with the children. . . .

Thus, other than Hammond having the children regularly on Wednesday evenings and a slight accommodation to the Friday pick-up time, no shift in timesharing has occurred. In fact, the timesharing is fairly traditional. Jones has the children Monday, after school, through Friday, after school. Hammond has them Friday afternoon/evening through Monday morning plus Wednesday evening for dinner. Furthermore, Jones disputes Hammond's child sharing percentages and proffers that she had the children on some weekends.

We are somewhat perplexed by the family court's conclusion that this parenting arrangement indicates a substantial shift in expenses not anticipated by the child support guidelines. The only expense enumerated is clothing, which does not indicate a significant shift in expenses. Thus, under the particular facts, we do not discern, from the record or the order, any "factor of an extraordinary nature specifically identified by the court which would make application of the guidelines inappropriate." KRS 403.211(3)(g). And, even though we are cognizant of the court's discretion in using the term "extraordinary," we are unable to find any substantial evidence that an extraordinary factor existed. Hence, we find that the court erred in finding such a factor, which would allow for deviation from the child support guidelines under KRS 403.211(3)(g).

Parents not only have a universal duty to support and maintain their minor children, they also have a statutory duty to support them. KRS 405.020. Although KRS 403.212, the Kentucky child support guidelines, supersedes this statute when a parent or an agency seeks support from the other parent, the duty to support one's child remains. Moreover, child support is a statutory duty intended to benefit the children, rather than the parents. *Clay v. Clay*, 707 S.W.2d 352 (Ky.App.1986).

Because parents have a duty to support their minor children, the family court's decision to terminate all Hammond's child support for his children is difficult to reconcile with public policy. This obligation is so sacrosanct that it may not be waived by contract between the parties. *Whicker v. Whicker*, 711 S.W.2d 857 (Ky.App.1986). We recognize that the family court has discretion with regard to the establishment and modification of child support, but such discretion must be exercised within the statutory parameters. *Van Meter v. Smith*, 14 S.W.3d 569 (Ky. App.2000). Therefore, it seems not only improper but also unfair in this situation to deviate from the child support guidelines by abolishing Hammond's entire child support obligation. As our Court held in *Plattner v. Plattner*, 228 S.W.3d 577, 579 (Ky.App.2007), "[w]hile Kentucky's child support guidelines do not contemplate such a shared custody arrangement, they do reflect the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes."

The statutory guidelines offer sufficient flexibility to allow trial courts to fashion appropriate and just child support orders. While we recognize and commend the family court's diligence in fashioning a considered opinion, we believe that this particular order, which terminated Hammond's child support obligation completely, does not fall within the statutory parameters, which define the child support obligation. Under the unique circumstances of this case, we conclude that the trial court erred by eliminating any obligation by Hammond to pay child support to Jones.

Having concluded that the family court did not abuse its discretion in imputing income to Jones or in finding that the children's independent financial resources

permitted deviation from the child support guidelines, we affirm in part. Having concluded, however, that the family court erred in completely eliminating Hammond's child support obligation, we reverse in part. And we remand to the family court so that it can calculate child support according to the child support guidelines with the imputation of income to Jones. Then, the family court shall use the children's income to deviate from the guidelines per each parent's proportionate child support responsibility. For the foregoing reasons, we affirm in part, reverse in part, and remand the judgment of the Jefferson Circuit Court for entry of an order consistent with this opinion.

ALL CONCUR.