RENDERED: NOVEMBER 1, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0880-MR

AOIFE SHAH                                         APPELLANT

v.            APPEAL FROM JESSAMINE CIRCUIT COURT
HONORABLE JEFFREY C. MOSS, JUDGE
ACTION NO. 22-CI-00173

JAY SHAH                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; A. JONES AND LAMBERT, JUDGES.

JONES, A., JUDGE: Aoife Shah appeals from the findings of fact, conclusions of law, and decree of dissolution entered by the Jessamine Family Court. The issues on appeal pertain only to property distribution, spousal maintenance, and debt allocation.[1] After careful review, we affirm.

---

[1] All matters related to child custody and visitation of the parties' five minor children were decided by the family court at a later date and are not part of this appeal.

# I.   FACTUAL AND PROCEDURAL BACKGROUND

The parties married in 2002.  During the marriage, Jay went to medical school and eventually became an orthopedic surgeon.  While Jay was attending medical school, Aoife worked full-time in medical equipment sales and was the primary breadwinner.  The parties had five children during the marriage. In 2015, Aoife quit working outside of the home and became a full-time homemaker.  Jay was working as an orthopedic surgeon in Kentucky, but in 2019, his employment contract was not renewed.  Jay attributes termination of his employment contract to Aoife's interference.  He accused her of frequently calling his place of employment and harassing his colleagues.[2]  Aoife attributed termination of Jay's employment contract to alcohol consumption and poor job performance.  Regardless, Jay soon found another position as an orthopedic surgeon, but in Greenville, South Carolina.  In 2019, Jay accepted the position with the understanding that Aoife and the children would also move once he was settled. Jay continued to pay the mortgage[3] on the marital home in Kentucky and all expenses for Aoife and the children, on top of his own living expenses in South Carolina.  However, months went by, and Jay eventually realized that Aoife had no

---

[2]  Jay submitted into evidence a letter sent to Aoife from his employer in which the employer threatened legal action if Aoife continued to harass employees.

[3]  The record before us indicates the mortgage payment on the marital home was approximately $4,600.00 per month.

intention of moving to South Carolina with the children. He filed for divorce in 2022.

The dissolution action was contentious from the outset, particularly in regard to custody and visitation of the children, but also in regard to spousal maintenance and child support. Jay never contested that he has the financial means to support Aoife and the children,[4] but repeatedly challenged Aoife's spending habits, including sending the children to both psychiatrists and psychologists that are not covered by Jay's health insurance. The family court entered a temporary order in which Jay was to pay Aoife $7,500.00 every two weeks, while also continuing to pay the mortgage on the home. The amount was inclusive of both temporary child support and spousal maintenance.

In January 2023, the family court conducted a two-day final hearing on all matters except child custody and visitation. The court then entered findings of fact, conclusions of law, and decree of dissolution that was twenty pages in length. Attached to the order was a spreadsheet that itemized the parties' assets and debts and assigned each accordingly. The marital home, which included approximately $268,000.00 in equity and $707,000.00 in debt was awarded to

---

[4] Jay earns approximately $900,000.00 per year as an orthopedic surgeon.

Aoife, which she requested.[5]  After assignment of the debts and assets, the family

court ordered Aoife to make an equalization payment to Jay of approximately

$124,000.00,  Aoife was awarded spousal maintenance; however, the award will

gradually decrease every two years, with the last payment by Jay scheduled for

February 2031.  Aoife filed a motion to alter, amend, or vacate the order.  The

family court entered an order making further findings but did not alter the

distribution of debts and assets.  Aoife appealed on numerous grounds.

## II. STANDARD OF REVIEW

The assignment of marital property and debts incurred during the

marriage are reviewed under an abuse of discretion standard.  *Neidlinger v.*

*Neidlinger*, 52 S.W.3d 513, 522 (Ky. 2001), *overruled on other grounds by Smith*

*v. McGill*, 556 S.W.3d 552 (Ky. 2018).  Similarly, "[w]hile the award of

maintenance comes within the sound discretion of the trial court, a reviewing court

will not uphold the award if it finds the trial court abused its discretion or based its

decision on findings of fact that are clearly erroneous."  *Powell v. Powell*, 107

S.W.3d 222, 224 (Ky. 2003) (citation omitted).  Finally, any deviation from the

statutory parameters of KRS[6] Chapter 403 with regard to the allocation of

---

[5]  The family court ordered that if Aoife could not refinance the mortgage into her name, the home was to be sold and the sale proceeds divided equally.

[6]  Kentucky Revised Statutes.

extraordinary medical expenses of the children is also reviewed under an abuse of discretion standard. *Van Meter v. Smith*, 14 S.W.3d 569, 574 (Ky. App. 2000).

### III. ANALYSIS

On appeal, Aoife argues the trial court erred by (1) not dividing the extraordinary medical expenses of the children in accordance with KRS 403.211(9); (2) failing to give her credit for one-half of the amounts Jay paid towards his student loans and for the downpayment on a Cadillac SUV; (3) requiring Aoife to reimburse Jay for half of the costs she alleged for refrigerator and masonry repairs; (4) assigning value to the personal property in the marital home without expert testimony; (5) not assigning Aoife's unsecured debt to Jay; and (6) reducing Jay's spousal maintenance payments to Aoife over time.

We first turn to Aoife's argument that the family court should have divided the children's extraordinary medical expenses in accordance with KRS 403.211(9). For the purpose of calculating child support and extraordinary expenses of the children, the family court looked to Jay's most recent W-2, which indicated his yearly income is $937,661.00. The court then imputed Aoife at $60,000.00 per year based on testimony that she previously worked in medical equipment sales. Aoife did not object to the imputed income. Accordingly, Jay earns 94% of the parties' combined income, and Aoife earns 6%. Because the parties' combined income exceeds the upper limits of the child support guidelines,

the family court looked to the needs of the children. *See* KRS 403.211(3). Aoife does not challenge the amount of child support on appeal; rather, she confines her argument to the allocation of the extraordinary medical expenses of the children.

KRS 403.211(9) provides that "[t]he initial two hundred fifty dollars ($250) of medical expenses shall be covered by the parent who maintains health insurance for the child or children subject to the order per calendar year, unless the parties have agreed otherwise." However, the family court ordered that the parties shall equally divide all of the children's extraordinary medical expenses up to $500.00 in cost per individual occurrence, and any expenses in excess of $500.00 shall be divided with 94% of the cost to Jay and 6% of the cost to Aoife. The family court has the discretion to deviate from the statutory parameters of KRS Chapter 403, "but only if it makes findings clearly justifying the deviation." *Van Meter*, 14 S.W.3d at 574. Here, the family court made the appropriate findings to justify the deviation. It found Jay paid $6,868.00 in extraordinary medical, mental health, dentist, and vision expenses for the children just for the short period of time from October 25, 2022, to December 3, 2022. Jay was concerned that Aoife was deliberately trying to increase the expenses. In its order denying Aoife's motion to alter, amend, or vacate, the family court further explained that

> [t]he [c]ourt is concerned that the proportion of income is
> so unbalanced that Aoife has no incentive to attempt to
> reduce costs by seeking other providers, comparison shop
> for medicines, or other steps people of less means would

attempt.  The [c]ourt seeks to conserve both parties'
resources by encouraging both parents to be thrifty and
reasonable regarding these expenses.

*See* page 2 of the family court's Order Following Motion to Alter, Amend, or Vacate.  The family court did not abuse its discretion in its allocation of the children's extraordinary medical expenses.

Aoife next argues that she should have received a credit for one-half of the reduction in Jay's student loans as well as credit for half of the downpayment of $20,000.00 Jay made towards the purchase of a Cadillac SUV. We first turn to the student loans.  After medical school, Jay had over $350,000.00 in student loan debt.  By the time the parties appeared before the family court in January 2023, Jay had reduced the amount owed to approximately $5,000.00. Aoife argues this debt reduction is the equivalent of dissipation of marital funds. We disagree.  Generally, student loan debt is nonmarital.  *See Van Bussum v. Van Bussum*, 728 S.W.2d 538, 539 (Ky. App. 1987).  Further, "[d]issipation occurs when marital property is expended (1) during a period when there is a separation or dissolution impending; and (2) where there is a clear showing of intent to deprive one's spouse of her proportionate share of the marital property."  *Heskett v. Heskett*, 245 S.W.3d 222, 227 (Ky. App. 2008) (internal quotation marks and citations omitted).

The record shows that Jay began making accelerated payments on his student loans in 2019 when he began working in South Carolina. However, he also started paying off other debt the parties had incurred. At the time, the parties were not contemplating divorce or separation, and Jay in fact continued to believe that Aoife and the children would join him in South Carolina. The family court found there was no evidence that Jay intended to deprive Aoife of any funds by paying down his student loan debt, and that her needs and the needs of the children were met at all times.

Regarding the downpayment on the Cadillac, Jay testified that, once he realized the children would not be moving to South Carolina, he needed a vehicle large enough to transport all five children during visits, so he purchased the 2020 Cadillac SUV with a $20,000.00 downpayment. The family court found that, although the vehicle was a marital asset, the downpayment simply increased the equity and decreased the lien, which was accounted for in the family court's spreadsheet, which shows the Cadillac is valued at $45,000.00, but has $25,000.00 in associated debt. Notably, Aoife received a 2019 Toyota Sienna valued at $27,838.00 that has no associated debt. The family court did not abuse its discretion when it found Jay did not dissipate marital assets when paying down his student loans or purchasing the Cadillac SUV.

We now turn to Aoife's assertion that the family court erred in requiring her to reimburse Jay for one-half of alleged expenses related to masonry work and refrigerator repairs for the marital home. The family court dedicated numerous pages in its order to what it believed was Aoife's deception and dishonesty to both Jay and the court regarding these expenses. Aoife generally was not able to prove her various monthly expenses for herself or the children, and these alleged repairs highlight what the family court believed was Aoife's scheme to get more money from Jay and the court. Briefly, in February 2022, Aoife informed Jay she needed $7,000.00 for repairs to the front steps of the marital home. Jay deposited the money into her bank account. However, he wanted to see a receipt or invoice and proof of the work performed. When he did not receive proof, Jay withdrew the money from the account. Emails between the parties were entered into evidence showing that Aoife insisted she needed the money because she had already given the contractor a check, so Jay again deposited $7,000.00 into Aoife's account. Nevertheless, Aoife's mother testified that she had also given Aoife $7,000.00 in cash to pay the contractor and Aoife never repaid her. There was no evidence of any money withdrawn from Aoife's account in the form of check or cash to pay the contractor and Aoife confirmed that she did not reimburse her mother. There was an invoice submitted into evidence, but the name of the contractor did not appear in a Google search, the address was only a road name,

and no one, including the family court, could reach the alleged contractor at the phone number listed. The family court found that "it was this incident in particular that leads the [c]ourt to be deeply concerned about Aoife's willingness to disregard the truth in favor of a narrative which she believes will better suit her interests, and which will result in the greatest possible award from the [c]ourt." In other words, the family court had serious concerns regarding Aoife's credibility.

Similarly, Aoife contacted Jay about what she claimed were repairs to the refrigerator totaling $2,342.00. Jay gave the funds to Aoife, but again requested proof of the work and wanted to know exactly what was done because he reasoned the parties could have purchased a new refrigerator for the same amount of money. Aoife presented him with a similar invoice that was lacking in details and Jay was unable to contact the alleged contractor. Aoife was also unable to produce any proof that she paid the contractor. The family court found that, "[b]y itself, the [c]ourt would not necessarily believe that Aoife was deceiving Jay, but combined with the other incident, it leads the [c]ourt to believe that Aoife had a pattern of convincing Jay to give her more money by coming up with repairs that supposedly needed to be done." Notably, Jay was paying bills, including the mortgage, and making payments directly to Aoife each month in the amount of $16,500.00, prior to entry of any order by the family court. The family court did

not abuse its discretion when it ordered Aoife to reimburse Jay for one-half the costs for the alleged repairs to the masonry and refrigerator.

Next, Aoife argues the family court erred by assigning value to the personal property in the marital home without expert testimony. Jay testified that, upon moving into the marital home, Aoife spent $50,000.00 for furnishings. He did not take any furnishings with him when he moved to South Carolina and provided some receipts showing he spent approximately $13,000.00 to furnish his apartment after the move, and estimated the furnishings were now worth $7,500.00. Jay estimated that, due to the passage of time and wear and tear, the furnishings in the marital home were worth approximately $20,000.00. Aoife failed to provide any evidence to the value of the personal property in the home. She simply testified that she believed the items were worth less than $20,000.00 but did not provide an amount. She did not dispute that she spent $50,000.00 to furnish the home. The family court valued the personal property in the marital home at $20,000.00 based on Jay's testimony and awarded it to Aoife.

On October 27, 2022, the family court entered a pre-trial order which stated, in relevant part, that the parties were to exchange, but not file with the court, a list of witnesses to be called. Therefore, Aoife's witness list does not appear in the record before us, and we do not know if she retained an expert witness to value the personal property in the home. Regardless, Aoife did not call

a witness to testify regarding the value of the personal property at the final hearing; and she now appeals the lack of expert testimony. If there was any error on the part of the family court, Aoife invited the error. Invited errors are those that reflect a party's knowing relinquishment of a right. *See Quisenberry v. Commonwealth*, 336 S.W.3d 19, 38 (Ky. 2011). "It is the rule that one cannot complain of an invited error." *Miles v. Southeastern Motor Truck Lines*, 173 S.W.2d 990, 998 (Ky. 1943). Aoife had the opportunity to provide evidence of the value of the personal property in the home; whether it was in the form of expert testimony was her decision to make. Yet she failed to present any evidence whatsoever with regard to the value of the personal property. Accordingly, there was no error on the part of the family court.

Aoife also contends the family court erred by assigning her unsecured credit card debt in the amount of $7,000.00 to her. The debt was subtracted from the assets awarded to Aoife on the family court's spreadsheet. Aoife argued the debt was incurred because she was supporting five children on her own after Jay moved to South Carolina. Again, Aoife's argument is lacking in any proof submitted to the family court. The record before us shows that Jay continued to cover all expenses for Aoife and the children after he moved. The family court also found that many of the alleged expenses Aoife claimed were either greatly

-12-

inflated or lacking in proof.  The family court did not abuse its discretion by

assigning Aoife's credit card debt to Aoife.

Finally, Aoife contends the family court erred by gradually reducing

her maintenance payments over time.  The family court ordered Jay to pay Aoife

$9,000.00 per month in spousal maintenance until March 1, 2025.  After that date,

he is ordered to pay $7,000.00 per month until March 1, 2027.  The amount

decreases by $2,000.00 every two years until the final payment of $3,000.00 on

February 1, 2031.

> Pursuant to KRS 403.200(1), a trial court may only award a spouse maintenance in a dissolution proceeding[] if it finds that two requirements are met.  First, "there must first be a finding that the spouse seeking maintenance lacks sufficient property, including marital property, to provide for his reasonable needs." *Drake v. Drake*, 721 S.W.2d 728, 730 (Ky. App. 1986). "Secondly, that spouse must be unable to support himself through appropriate employment according to the standard of living established during the marriage." *Id.* (citing *Lovett v. Lovett*, 688 S.W.2d 329, 332 (Ky. 1985)).  If a trial court determines that a spouse is entitled to receive maintenance, it looks to the factors listed in KRS 403.200(2) to determine the amount and duration of maintenance payments.

*Roper v. Roper*, 594 S.W.3d 211, 230 (Ky. App. 2019).

Jay did not dispute that Aoife was entitled to spousal maintenance.  It

is also important to note that Jay was also ordered to pay $7,500.00 per month in

-13-

child support for the five children and neither party contests that amount.[7]  Before the circuit court, Aoife argued that Jay had previously been paying the mortgage as well and requested an additional $4,600.00 per month in spousal maintenance to cover the mortgage and no gradual reduction.  She continues that argument to this Court, asserting that the mortgage payment will not decrease, so the gradual decrease in the amount of maintenance by the family court was arbitrary.  We disagree.

Aoife testified at trial that she previously had a career in medical equipment sales and made over $100,000.00 per year.  She stopped working after the birth of the parties' youngest child, who was in kindergarten at the time of the final hearing.  Emails were admitted into evidence that showed Aoife was actively job searching from 2020 – 2022 and had interviews and offers for employment.  Yet, at the final hearing, she testified that she did not want to go back to work until the youngest child is in high school, or approximately nine years from the date of the final hearing.  The family court determined that it was unreasonable for Aoife to wait nine years to return to the workforce.  Further, the family court found that Aoife greatly exaggerated or was dishonest about her monthly expenses.  For

---

[7]  Aoife also received one-half of Jay's retirement accounts.  Although not immediately accessible to Aoife, Jay testified the accounts were valued at $256,401.00 at the time of the final hearing.  The family court did not include the retirement accounts in the spreadsheet of assets and debts.

example, she testified the cost for the children to participate in an elite soccer program in Lexington was $3,000.00 per year per child. The family court gave her an opportunity to submit proof of those expenses on the second day of the final hearing. The proof provided showed the expenses were much less than what Aoife had stated. Additionally, Aoife indicated she spends $1,300.00 per month on gasoline alone. The family court undertook a mathematical analysis that we will not repeat here but based on the known miles per gallon of her vehicle combined with the known mileage on the vehicle, the length of time she has owned the vehicle, and the average cost of gasoline, the family court found that it was simply impossible that Aoife spends $1,300.00 per month on gasoline. That, combined with what the family court determined was her deception and dishonesty regarding home repairs, severely damaged Aoife's credibility to the family court, which believed her monthly expenses were exaggerated due to lack of proof. Accordingly, the family court did not abuse its discretion in amount, duration, or gradual reduction in Aoife's maintenance payments.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Jessamine Family Court is affirmed.


ALL CONCUR.


-15-

BRIEF FOR APPELLANT:        BRIEF FOR APPELLEE:

Michael Davidson           Seth R. Thomas
Lexington, Kentucky       Nicholasville, Kentucky