RENDERED: MARCH 26, 2020
TO BE PUBLISHED

Supreme Court of Kentucky FINAL

DATE 5/18/20

a hutcherson

2019-SC-000364-DGE

ASHLEY LAYMAN                                                    APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                              CASE NO. 2018-CA-001540
BOYD CIRCUIT COURT NO. 16-CI-00255


RICHARD LEE BOHANON, JR.                                        APPELLEE


**OPINION OF THE COURT BY JUSTICE KELLER**

**REVERSING**

The Boyd Family Court issued an order modifying the parties'

timesharing arrangement and holiday schedule and recalculating child

support. The father, Richard Lee Bohanon, Jr., appealed. The Court of Appeals

affirmed the family court's modification of the holiday schedule but reversed

that portion of the family court's order that modified timesharing and child

support. The mother, Ashley Layman, petitioned this Court for discretionary

review, which we granted. Having reviewed the record and the applicable law,

we reverse the decision of the Court of Appeals as to the issues before us.

## I.    BACKGROUND

Layman and Bohanon divorced on June 14, 2016. They entered into a

settlement agreement in which they shared joint custody and equal parenting

time with their two minor children, then ages four and seven. Under that agreement, neither parent was listed as the primary residential custodian. Rather, Layman would keep the children one week and Bohanon would keep them the following week. This week-on-week-off schedule continued for approximately two months, until Bohanon's work schedule changed in August 2016. Under his new schedule, he had two weekdays off each week. As a result, the parties altered the timesharing arrangement such that the children stayed with Bohanon two consecutive days during the week (including overnight) and every other weekend. Under this modified arrangement, the children stayed with Bohanon on Tuesday and Wednesday of one week, then Thursday through Sunday of the next week, after which the two-week cycle would repeat. Thus, the parties still shared equal parenting time.[1]

The parties' modified timesharing arrangement was not memorialized in writing but continued for almost two years. During that time, Bohanon remarried. He is now a stepfather to his wife's two children, and he and his wife also have twins, born in March 2018. He lives approximately three minutes from Layman's home.

On April 13, 2018, Bohanon filed a motion to memorialize the modified timesharing schedule. He also moved for, among other things,[2] modification of

---

[1] Layman testified that the arrangement provided her with slightly more time with the children, but only about four days total, spread out over the course of the year.

[2] Bohanon also asked the family court to modify certain provisions of the settlement agreement related to life insurance, health insurance, and unpaid medical

2

the parties' holiday schedule, arguing that the current schedule allowed Layman to have the children on almost every holiday. In addition, Bohanon requested a modification of child support. More specifically, he sought recalculation of the amount agreed to in the settlement agreement—$400 per month—because Layman voluntarily quit her previous job and had since been receiving "gift income" from her parents, including $2,000 a month and a new automobile.

The family court held a two-day hearing. During the hearing, Layman requested that the children stay with her Mondays through Fridays. Under her proposed timesharing schedule, the children would sleep at her house during the week, but Bohanon could visit with the children and attend extracurricular activities on his two days off. She argued that this arrangement would be in the best interest of the children because it would provide consistency and hopefully help with certain behavioral issues. For example, she testified that the children struggled to complete their homework during the week, there were issues with transporting the children to and from their extracurricular activities, and the parties' daughter often fought with one of Bohanon's stepchildren.

On October 3, 2018, the family court entered an order in which it found that "it is in the best interests of the children for the children to live primarily with [Layman]." It also ordered that Bohanon's parenting time follow the schedule set forth in Plaintiff's Exhibit #1, which outlined the timesharing

---

expenses. He also requested that each party be allowed to claim one child for tax purposes. None of these issues are before us today.

schedule that the parties had been abiding by since August 2016. The court also adopted the holiday and vacation schedule proposed by Layman, and recalculated Bohanon's child support at $925 per month based on the guidelines but eliminated his obligation to pay for extracurricular activities or academic expenses.[3]

Bohanon filed a motion to alter, amend, or vacate. Relevant to this appeal, Bohanon took issue with the court's designation of Layman as the primary residential custodian and its calculation of child support. On the issue of child support, Bohanon again argued that Layman was voluntarily underemployed and received gifts from her parents that should be included as income in the child support calculation.

In response, the family court issued an order on October 15, 2018 amending its previous order. The court explained that it had inadvertently referenced Plaintiff's Exhibit #1 and clarified that this would not be the timesharing schedule going forward. Rather, under the amended order, Bohanon would keep the children every other weekend and two days per week for three hours each day, from 5:00 PM to 8:00 PM. The family court explained that this schedule would allow the children to spend time with Bohanon, while also addressing Layman's concerns about homework, academics, and

_____

[3] The family court order also addressed other matters not relevant for purposes of this appeal, including Bohanon's request that each party be able to claim one child for tax purposes and his request that the court amend the life insurance provision of the settlement agreement. The court sustained the motion to claim one child for tax purposes but found that it lacked the jurisdiction necessary to amend the life insurance provision. Those rulings are not before this court.

4

extracurricular activities. It would also allow the children to spend the night in the same home throughout the week.

Bohanon appealed. In his prehearing statement to the Court of Appeals, Bohanon argued that the family court erred in (1) awarding primary custody to Layman; (2) reducing Bohanon's timesharing; and (3) recalculating child support "without considering all relevant facts and income." More specifically, he argued that the family court failed to consider the presumption for joint custody and equal parenting time set forth in the custody determination statute, Kentucky Revised Statute ("KRS") 403.270, and the custody modification statute, KRS 403.340. He also argued that the family court failed to consider shared parenting time when calculating child support, and he again reiterated his argument that Layman was voluntarily underemployed and receiving gift income.

The Court of Appeals affirmed in part and reversed in part. As explained in more detail below, the Court of Appeals read KRS 403.270 (the custody determination statute) in conjunction with KRS 403.320 (the visitation modification statute). It concluded that that the family court could only modify the equal timesharing schedule—thereby reducing Bohanon's parenting time to less than fifty-percent—if it first found that the children were seriously endangered. There were no such findings, and the Court of Appeals therefore reversed the family court's timesharing modification. The Court of Appeals also found that the family court erred in failing to impute income to Layman for the

5

gifts she received from her parents. It affirmed the family court's finding that Layman was not voluntarily underemployed, however.[4]

This Court granted Layman's petition for discretionary review to determine (1) whether the Court of Appeals correctly interpreted and applied KRS 403.320 and KRS 403.270; (2) whether the family court erred in modifying the timesharing arrangement; and (3) whether the family court erred in declining to impute income to Layman for gifts she received from her parents. We address each issue in turn.

## II. ANALYSIS

### A. The Court of Appeals incorrectly interpreted and applied KRS 403.270 and KRS 403.320.

Layman first argues that the Court of Appeals erred in applying KRS 403.270 to a modification of timesharing. The parties requested a modification of timesharing, not custody, and Layman therefore argues that the court was bound to the standard set forth in KRS 403.320, *not* the standard for determining custody found in KRS 403.270. This issue is one of statutory interpretation, and we therefore review it de novo. *Bob Hook Chevrolet Isuzu, Inc. v. Com. Transp. Cabinet*, 983 S.W.2d 488, 490 (Ky. 1998).

A review of the relevant statutes is necessary. We turn first to KRS 403.270, the custody determination statute. Under that statute,

> The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each

---

[4] The Court of Appeals also affirmed the family court's modification of the parties' holiday schedule. That issue was not raised in Layman's petition for discretionary review and is not before this Court.

> parent and to any de facto custodian. *Subject to KRS 403.315,*
> *there shall be a presumption, rebuttable by a preponderance of*
> *evidence, that joint custody and equally shared parenting time is in*
> *the best interest of the child. If a deviation from equal parenting time*
> *is warranted, the court shall construct a parenting time schedule*
> *which maximizes the time each parent or de facto custodian has*
> *with the child and is consistent with ensuring the child's welfare.*
> The court shall consider all relevant factors including: [a list of
> factors enumerated in the statute].

KRS 403.270(2) (emphasis added). Prior to July 2018, this subsection included only the first and last sentence. The remainder of the subsection, emphasized above, was added and became effective July 14, 2018, shortly before the hearing in this case.

KRS 403.320(3) governs the modification of visitation. Under that statute, "The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health." The term "visitation" is often used interchangeably with "timesharing." *Anderson v. Johnson*, 350 S.W.3d 453, 455 n.1 (Ky. 2011) (citing *Pennington v. Marcum*, 266 S.W.3d 759, 765 (Ky. 2008)). Furthermore, "the term 'restrict' means to provide [either] parent with something less than 'reasonable visitation.'" *French v. French*, 581 S.W.3d 45, 50 (Ky. App. 2019) (quoting *Kulas v. Kulas*, 898 S.W.2d 529, 530 (Ky. App. 1995)). Accordingly, under KRS 403.320(3), a court can modify timesharing if it is in the best interests of the child, but it can only order a "less than reasonable" timesharing arrangement if the child's health is seriously endangered.

7

In the present case, the Court of Appeals considered both KRS

403.320(3) and the recent amendment to KRS 403.270(2) and held:

> Reading KRS 403.320(3) in context with the newly applicable language of KRS 403.270(2), we find there is a rebuttable presumption that equal parenting time is in the child's best interest. Consequently, to modify the current visitation schedule, the court must find visitation would 'endanger seriously the child's physical, mental, moral, or emotional health.' *See* KRS 403.320(3). Without that specific finding, visitation *shall not* be restricted. *Id.* If it is found that the child's best interest is not served because of serious endangerment, the court shall construct a parenting time schedule which maximizes the time each parent has with [the] children. *See* KRS 403.270(2).

In other words, the Court of Appeals held that when a court modifies

timesharing, any deviation from equal timesharing amounts to a restriction

and therefore requires a finding of serious endangerment. We disagree with this

analysis.

We first acknowledge that the equal timesharing presumption of KRS

403.270(2) is new to Kentucky and unique among the custody laws of other

states, thereby limiting the precedent available to us. However, we believe that

our canons of statutory construction, combined with our timesharing

precedent, can resolve this issue. For example, we "must interpret the statute

according to the plain meaning of the act and in accordance with the legislative

intent." *Floyd Cnty. Bd. of Edu. v. Ratliff*, 955 S.W.2d 921, 925 (Ky. 1997).

With these principles in mind, we turn to the plain language of the two

statutes at issue: KRS 403.270 and KRS 403.320. Each addresses a separate

stage of a custody dispute: the initial custody determination and modification

of visitation or timesharing. For each of these stages, a different standard is

8

established. Under KRS 403.270, an initial determination of custody requires consideration of the best interests of the child, with a rebuttable presumption that joint custody and equal parenting time is in the child's best interests. A modification of visitation or timesharing, governed by KRS 403.320, on the other hand, requires that the change be in the best interests of the child, unless the modification is "less than reasonable," in which case the physical, mental, moral, or emotional health of the child must be seriously endangered.

Notably, the timesharing modification statute does *not* impose a presumption of joint custody and equal parenting time. Of these two statutes, that language is included only in the custody determination statute, KRS 403.270. Notably, the legislature also added this presumption language to KRS 403.340, the statute governing modifications in custody. Under KRS 403.340(6),

> if the court orders a modification of a child custody decree, there shall be a presumption, rebuttable by a preponderance of evidence, that it is in the best interest of the child for the parents to have joint custody and share equally in parenting time. If a deviation from equal parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent or de facto custodian has with the child and is consistent with ensuring the child's welfare.

This presumption language was added by amendment in 2018, at the same time that KRS 403.270 was similarly amended. We assume that the legislature acted intentionally in excluding such a presumption from KRS 403.320, the visitation modification statute.

Our case law also clarifies the different and distinct roles that these custody and visitation statutes play. More specifically, our courts have

9

distinguished between an initial custody determination, which is governed by KRS 403.270, and a modification of that decree, either under KRS 403.320 or KRS 403.340. *See Pennington,* 266 S.W.3d at 765; *Frances v. Frances,* 266 S.W.3d 754, 756–57 (Ky. 2008); *French,* 581 S.W.3d at 50. For example, in *Pennington v. Marcum,* we considered the effect of one parent's relocation and explained,

> [W]hen a final custody decree has been entered, as in this case, and a relocation motion arises, any post-decree determination made by the court is a modification, either of custody or timesharing/visitation. If a change in custody is sought, KRS 403.340 governs. If it is only timesharing/visitation for which modification is sought, then KRS 403.320 either applies directly or may be construed to do so.

266 S.W.3d at 765.

Similarly, we hold that a modification of visitation or timesharing is governed by KRS 403.320, rather than the standard for an initial custody determination as set forth in KRS 403.270. Accordingly, the recently added presumption of joint custody and equal parenting time in KRS 403.270 applies to custody determinations, but it does not apply to modifications of visitation or timesharing.

In the present case, the parties sought and the family court ordered a modification of timesharing. As a result, KRS 403.320(3) should have applied. Under that statute, the family court could modify the timesharing arrangement if it first found that the modification was in the best interests of the children, or it could restrict timesharing (i.e., order a "less than reasonable" timesharing) if it first found that the children's physical, mental, moral or emotional health

was seriously endangered. Thus, the Court of Appeals should have considered whether the modified timesharing arrangement was "less than reasonable." Under our case law, less than reasonable does not necessarily mean less than fifty percent parenting time. *See, e.g., French*, 581 S.W.3d at 50. Nevertheless, the Court of Appeals referred to the standard for custody determinations in KRS 403.270 and concluded that *any* reduction in a fifty-fifty timesharing arrangement was less than reasonable or, in other words, a restriction. Stated another way, the Court of Appeals concluded that *any* change in the parties' equal timesharing arrangement required a finding that visitation would seriously endanger the children's physical, mental, moral, or emotional health. We believe that this was an improper conflation of the standards for custody determination under KRS 403.270 and timesharing modification under KRS 403.320. As noted above, these statutes set forth separate standards for distinct stages of a custody proceeding.

Accordingly, we conclude that the Court of Appeals incorrectly interpreted and applied KRS 403.320(3) and KRS 403.270(2).

### B. The family court did not err in modifying timesharing.

Having clarified the correct application of KRS 403.320(3) and KRS 403.270(2), we next consider whether the family court erred in modifying the parties' timesharing schedule.[5] On this point, we note that the family court has

---

[5] In his appeal to the Court of Appeals, Bohanon argued that the family court modified the joint custody arrangement by designating Layman as the primary residential custodian. In his briefs to this Court, however, Bohanon does not dispute that the trial court modified timesharing, rather than custody. For clarity, we note that a trial court may designate a child's primary residence, even in joint custody

11

broad discretion in modifying timesharing. *Pennington*, 266 S.W.3d at 769.

Accordingly, we "will only reverse a circuit court's determinations as to

visitation if they constitute a manifest abuse of discretion, or were clearly

erroneous in light of the facts and circumstances of the case." *Drury v. Drury*,

32 S.W.3d 521, 525 (Ky. App. 2000). Furthermore, "[d]ue regard shall be given

to the opportunity of the trial court to judge the credibility of the witnesses."

*Humphrey v. Humphrey*, 326 S.W.3d 460, 463 (Ky. App. 2010) (citing *Murphy v.*

*Murphy*, 272 S.W.3d 864 (Ky. App. 2008)).

As noted above, the modification of the timesharing schedule was

governed by KRS 403.320(3). Accordingly, the family court could either (1)

order a reasonable timesharing schedule if it found that it would be in the best

interests of the children to do so or (2) order a "less than reasonable"

timesharing arrangement if it first found that the children's health was

seriously endangered. Thus, we must first consider whether the timesharing

arrangement, as modified by the family court, was reasonable.

There is no set formula for determining whether a modified timesharing

arrangement is reasonable; rather, it is a matter that must be decided based

upon the unique circumstances of each case. *Drury*, 32 S.W.3d at 524. For

example, it does not necessarily mean that a parent has less than reasonable

timesharing just because he or she spends less time with the child than under

_____

arrangements. *Drury*, 32 S.W.3d at 524 (citation omitted). In this case, the trial judge found that it was in the best interests for the children to live primarily with Layman; this is not a modification of the parties' joint custody arrangement. *Pennington*, 266 S.W.3d at 767.

12

the original timesharing arrangement. *French*, 581 S.W.3d at 50; *see also Kulas*, 898 S.W.2d 529.

Under the informal arrangement in place prior to these proceedings, the parties continued to share parenting time equally, though under a modified exchange schedule. Layman testified that the modified schedule created certain problems. For example, she testified that "[i]t's very difficult for the kids to go back and forth as much in terms of keeping up with everything," and she did not believe that the schedule was good for the children. She testified that they missed extracurricular activities and had trouble completing their homework during the week. The parties' testimony also indicated that their daughter had trouble sleeping at Bohanon's house and would cry at bedtime. Their daughter also had a difficult relationship with one of Bohanon's stepdaughters. The two girls are the same age and very competitive with each other. Though Bohanon testified that the two children "played together every day," he also acknowledged that they fought often. Apparently, the parties requested that the two children be placed into different classes at school. Given these various issues, Layman proposed that the children stay with her during the week to provide "more consistency, more structure" to the children and to allow her time "to make sure their school and extracurricular activities are taken care of." She acknowledged that the children needed to see their father and proposed that he be able to visit with them during the week.

Under the family court's order, Bohanon received no overnight visits during the week, six hours of parenting time during the week, and overnight

13

visits every other weekend. Though this reduced the amount of time that Bohanon kept the children, the family court provided specific reasons why this change was necessary. For example, the court explained that this schedule would allow the children to spend time with Bohanon during the week, but would also address Layman's concerns about academics, extracurricular activities, and consistency in the children's lives. Under these circumstances, we do not think that the family court ordered less than reasonable timesharing.

Because the family court ordered a reasonable timesharing schedule—in other words, a modification, not a restriction—we next consider whether the family court properly found that the arrangement was in the best interests of the children. On this point, the Court of Appeals noted that, even under a best interest standard, the modification would fail, as the family court "failed to analyze *any* factors to support its decision." The Court of Appeals held that "[t]he circuit court failed to consider the relationships with the half-siblings, the relationship with their parents, the proximity of the children to their home, school, and community, or the mental and physical health of all parties." The Court of Appeals therefore held that "even under a best interest standard, we could not find it was a proper ruling." We disagree, however, as the family court's initial order and its amended order discussed relevant factors that support the modification. For example, the October 15, 2018 amended order stated that the timesharing arrangement "will ensure that the children continue to spend time with [Bohanon], while also addressing the Court's concerns about homework, academics, and school activities and further

14

allowing the children spend [sic] the night in the same place each night through the school week." We believe that, in this case, the factors listed in the family court's orders are sufficient to satisfy the best interests of the children standard.

Accordingly, we hold that the family court did not err in modifying the timesharing schedule as set forth in its October 15, 2018 amended order, and we therefore reverse the Court of Appeals on this issue.

## C. The family court did not err in declining to impute income to Layman for gifts received from her parents.

Lastly, Layman disagrees with the Court of Appeals' determination that certain gifts should have been included in her income for purposes of calculating child support. She argues that the family court, which did not impute any income for the gifts, correctly calculated child support based upon the parties' stated salaries. The family court "has broad discretion in determining the appropriate amount of child support owed by a parent." *Jones v. Hammond*, 329 S.W.3d 331, 336 (Ky. App. 2010). Accordingly, "a reviewing court will uphold the [child support] award if the trial court did not abuse that discretion or base its decision on findings of fact that are clearly erroneous." *Penner v. Penner*, 411 S.W.3d 775, 779 (Ky. App. 2013) (citing *Brooks v. Brooks*, 350 S.W.3d 823, 827 (Ky. App. 2011)). In the context of child support, "[a]n abuse of discretion has occurred if the family court's 'decision was arbitrary, unreasonable, unfair, or unsupported by sound legal

15

principles.'" *Jones*, 329 S.W.3d at 336 (quoting *Downing v. Downing*, 45 S.W.3d 449, 454 (Ky. App. 2001)).

KRS 403.212 provides the child support guidelines for the Commonwealth of Kentucky. The guidelines calculate support payments based on, among other things, the number of children and the combined monthly adjusted gross income of the parents. "Gross income" is defined as

> income from any source, except as excluded in this subsection, and includes but is not limited to income from salaries, wages, retirement and pension funds, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, Social Security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, Supplemental Security Income (SSI), *gifts*, prizes, and alimony or maintenance received.

KRS 403.212(3)(d) (emphasis added). Thus, gifts should typically be included in gross income for purposes of calculating child support. However, "[t]he trial court may determine that a gift should not be included in income if it is inconsequential, nonrecurring or unlikely to provide sufficient funds to pay the increased child support obligation." *Stewart v. Burton*, 108 S.W.3d 647, 648–49 (Ky. App. 2003).

In this case, Bohanon paid approximately $400 a month in child support under the terms of the parties' 2016 settlement agreement. This was an agreed upon deviation from the child support guidelines. At that time, Layman made approximately $39,000 a year[6] working as a purchasing manager at Ashland

---

[6] Layman testified that in 2015, while still working as a purchasing manager for the family business, she made approximately $39,000.

Fabricating and Welding, her family's business. After the entry of that settlement agreement, Layman's salary decreased to $25,657. This reduction occurred after Layman's father suffered a traumatic brain injury in November 2018. Her family asked her to switch her duties from purchasing to caring for her father.

Layman also testified that she has received other forms of compensation for her work for the family business. For example, she receives health insurance and a cell phone. Her parents also occasionally pay for her travel expenses, and they purchased a Cadillac Escalade for her when her previous car "rusted out." Her parents also provide $1000 per month per child, for a total of $2,000 per month. Layman testified that this monthly gift was given to the children and she "use[s] it on them," though she did not specify further. Layman also testified that these various gifts were in exchange for the work she does for the company, but later clarified that her parents would have provided the car and the monthly $2000 gifts even if she did not work for the family business.

The family court calculated the child support amount based on the guidelines, using Bohanon's $62,000 salary and Layman's $25,657 salary. The family court did not make any specific findings regarding the gifts, but it did not impute any additional income to Layman. Presumably, then, the family court did not believe that the gifts should be included as part of Layman's

gross income.[7] We see no abuse of discretion in this decision given the facts as developed at the hearing.

First, we note that "[t]he party who wants the trial court to use a different income level in applying the child support guidelines bears the burden of presenting evidence which would support the requested finding." *Keplinger v. Keplinger*, 839 S.W.2d 566, 569 (Ky. App. 1992) (citation omitted). The burden in this case rested on Bohanon, but he did not present sufficient evidence to support his requests. For example, the parties did not provide any evidence of the value of the Cadillac Escalade. Layman testified that her parents purchased the vehicle for her, but she did not provide any evidence—testimonial or otherwise—of its value or even the model and condition of the vehicle. Bohanon did not provide any evidence of the vehicle's value, either. Though he attempts to reference the Kelley Blue Book value to this Court, he provided no such evidence to the trial court, nor is there any evidence of the model or condition of the vehicle, both of which are necessary to determine its value. More importantly, however, there is no evidence indicating that this was a recurring gift. Layman testified that her parents purchased the vehicle for her after her previous fifteen-year-old vehicle "rusted out"; this would suggest that the gift was nonrecurring. For these reasons, we do not believe that the family court

---

[7] It would also appear that the family court did not believe that Layman was voluntarily underemployed. That decision was raised by Bohanon in his appeal to the Court of Appeals and the Court of Appeals affirmed the family court's ruling. However, that issue was not raised in Layman's petition for discretionary review, and, therefore, we need not consider it.

abused its discretion in declining to include this gift in Layman's gross income.

In addition, the evidence, though limited, indicates that the $1000 monthly gifts were given *to the children*, for their use. According to Layman's uncontested testimony, her children received the monthly gifts from Layman's parents and Layman used the money to purchase things for the children. Bohanon even referenced this money as the "children's income" in his filings with the family court. Given Layman's testimony that these monthly gifts were made to the children and the lack of evidence to the contrary, we cannot fault the family court for declining to include these gifts as income *for Layman*. On this point, we again note that Bohanon bore the burden of presenting sufficient evidence to support a change in Layman's income level.

We are mindful that KRS 403.211(3) authorizes the family court to deviate from the child support guidelines if it finds that application of the guidelines would be unjust or inappropriate based upon an enumerated list of criteria, including "[t]he independent financial resources, if any, of the child or children." KRS 403.211(3)(d). However, that argument was not raised to the family court, the Court of Appeals, or this Court. Furthermore, at the hearing before the family court, the parties did not develop the facts necessary to support such a deviation. As a result, we cannot fault the family court's decision to apply the child support guidelines.

In sum, we disagree with the Court of Appeals' determination that the monthly gifts and the Escalade should have been imputed to Layman as income under the facts as developed at the hearing. Based upon the testimony

19

at the hearing, it was not an abuse of discretion to decline to include those gifts in Layman's income. We therefore reverse the Court of Appeals on this issue.

## III.    CONCLUSION

For the reasons set forth above, we hereby reverse the opinion of the Court of Appeals as to the issues before us and reinstate the orders of the Boyd Family Court.

Minton, C.J.; Hughes, Keller, Lambert, and Wright, JJ., concur. VanMeter, J., concurs in result only. Nickell, J., not sitting.

COUNSEL FOR APPELLANT:

Paul E. Craft

COUNSEL FOR APPELLEE:

Tracy Denise Frye
Marie Elizabeth Troxler
Frye Law Offices, P.S.C.