RENDERED: MARCH 7, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1101-MR

STEPHANIE ROSE (F/K/A AYO)                                          APPELLANT

v.          APPEAL FROM JEFFERSON CIRCUIT COURT
            HONORABLE ANGELA J. JOHNSON, JUDGE
            ACTION NO. 21-CI-503746

DARRYL AYO                                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, KAREM, AND TAYLOR, JUDGES.

ACREE, JUDGE:  Appellant Stephanie Rose appeals the Jefferson Circuit Court

Family Division's August 1, 2023, order awarding Appellee Darryl Ayo permanent

sole custody of the parties' children.[1]  We affirm.

---

[1] Rose's Notice of Appeal indicates she is also appealing the denial of her motion to alter, amend, or vacate that order pursuant to CR 59.05.  However, "there is no appeal from the *denial* of a CR 59.05 motion."  *Ford v. Ford*, 578 S.W.3d 356, 366 (Ky. App. 2019).  The denial does not alter the judgment but merely suspends the running of time within which an appeal may be

# BACKGROUND

Rose and Ayo were married ten years and had three children, sons, ages 9, 7, and 6. Well before entry of the custody order from which Rose brings her appeal, in December 2021, Rose obtained for herself a three-year order of protection from Ayo (DVO). Soon thereafter, she filed for divorce.

In April 2022, the family court ordered a temporary parenting schedule, incorporating KRS[2] 403.315, which dispenses with the KRS 403.270 presumption of joint custody and equal parenting time when a party is subject to a DVO. However, the family court applied that statute and found Ayo did "not present a danger to the children's mental, moral, physical, or emotional health," (Record (R.) 76), and awarded the parties equal parenting time. Joint custody continued pursuant to KRS 405.020(1).[3] To facilitate care for the children, Rose remained in the marital residence and received child support from Ayo.

---

taken. "[T]he appeal is from the underlying judgment, not the denial of the CR 59.05 motion." *Id.*

[2] Kentucky Revised Statutes.

[3] This order makes no express award of custody. The effect after addressing the KRS 403.315 considerations is that joint custody is implied, presumed, and continued in accordance with KRS 405.020(1) which says, "The father and mother shall have the joint custody, nurture, and education of their children who are under the age of eighteen (18) . . . ." *Gonzalez v. Dooley*, 614 S.W.3d 515, 520 (Ky. App. 2020).

In mid-July 2022, Ayo moved for sole custody and supported the motion with his affidavit. He said, "there is absolutely no communication between the parties." He documented his general assertion that Rose was "very often late to either pick up or drop off the children at the HOI [Home of the Innocents] Exchange Center" with an example. On July 9, 2022, Ayo and the children were waiting at the Exchange Center and Rose was "significantly late." Rose eventually called the Exchange Center "and advised them that she would not be picking up the children and, in fact, that she would not be picking them up until July 16, 2022." She gave no explanation why she could not take custody of the children for a week or where she had gone.

Ayo's affidavit went on to say Rose "is still not working. She let her real estate license lapse." In addition to child support Ayo paid Rose, which she acknowledged was her sole means of support, Ayo was paying all the bills for upkeep of the marital home. Rose "often sends the children to [Ayo] without the proper clothing, especially undergarments. When she runs out of pull-ups [a disposable diaper for toddlers], she simply sends the children with no underclothes." Finally, Ayo averred that, "[o]n several occasions the parties' eldest son has refused to go back to [Rose] during exchanges at HOI." Ayo expressed his opinion that the son's reluctance to return to Rose is "associated with the emotional and mental distress that [she] is placing on the children."

Rose asked for the appointment of a Friend of the Court (FOC) and the family court granted her motion. The FOC's initial interview of Rose caused him sufficient concern that he immediately drafted and submitted a preliminary report which he acknowledged was "premature but in his opinion necessary."

The FOC reported he met with Rose who responded to some questions only indirectly, by presenting a poem "that provided some information about her stance . . . and required the FOC to derive what she was saying from the content of the poem." Rose was "unwilling to discuss moving forward in terms of the divorce and the custody arrangement." Although young and healthy, Rose chose not to earn a wage. When asked about prospects for earning a living, she responded that "she had no plans other than reliance upon her faith." She had no cell phone and no internet service and "the only way to contact her [wa]s through the US Mail." This concerned the FOC because it hindered communication with Ayo that necessarily impacted the children.

The FOC's concern about Rose's "ability to grasp the reality of this situation and ability to parent these children" led him to recommend that Rose "submit to a psychological assessment to be able to gauge [her] mental health[,]" after which the FOC "believe[d] that he w[ould] be in a better position to make recommendations about this family."

In August 2022, the family court ordered Rose to participate in a psychological evaluation. For reasons not relevant to this appellate review, the date scheduled for a final dissolution hearing arrived before the evaluation could be conducted. The family court proceeded with the hearing in December 2022 and entered a decree less than a week later.

Regarding custody and parenting time, the court memorialized in the decree the following facts. Rose's "behavior has shown an apparent disconnect from reality" and attributed that behavior to either "a serious mental ailment or a lack of seriousness about this court process." The family court expressed concern that Rose's behavior was affecting the children in a negative way, noting that her homeschooling efforts may have resulted in the parties' eldest child being "behind in his learning[,]" perhaps because Rose was limiting the children's education to "studying the Bible." Additionally, the family court expressed concern Rose "has yet to abide by this court's ordered psychiatric evaluation" four months earlier.

The trial court awarded Ayo "temporary sole custody of the parties' minor children," but allowing Rose leave to "motion the Court regarding custody and parenting time." A few weeks later, Rose obtained new counsel.

In February 2023, Rose was evaluated by a psychologist, Sarah Roos, PsyD, LP. Dr. Roos' attempt to undertake a Personality Assessment Inventory resulted in a "marginally valid profile. . . . As such, her results should be

interpreted with caution." Rose's responses exhibited "defensiveness" and she "attempt[ed] to present herself as free from common shortcomings most individuals admit." Dr. Roos interpreted Rose's responses as "suggest[ing that,] while she is likely warm and places a high value on interpersonal relationships, others may experience her as domineering and having little tolerance for those who disagree with her." She continued, stating, "Of note, Ms. Rose's responses suggest she . . . presents as resistant or difficult to engage in treatment."

Dr. Roos also assessed Rose "[o]n the Child Abuse Potential inventory. . . , a measure of characteristics similar to those of known physically abusive parents[.]" Based on Rose's responses, Dr. Roos concluded that "it is not possible to rule-out the presence of characteristics similar to those of known abusive parents or potential rigid beliefs around children and parenting."

The psychologist recommended that Rose identify and maintain employment, affordable health insurance, and "safe, affordable, and adequate housing for herself and her children as she reported needing to vacate her marital home due to the court proceedings." Finally, Dr. Roos stated: "Ms. Rose does not appear to be a significant risk to her children at this time, and increasing her parenting time could be considered given her children's ability to safely tolerate the contact and if deemed appropriate by the court." On February 21, 2023, with

this psychological evaluation as evidence, Rose filed a motion to restore the children to the parties' joint custody and to increase her parenting time.

In the meantime, and in accordance with the decree, Ayo refinanced the marital residence and distributed to Rose 50% of its value. He began living there with the children in April 2023. Rose and the children resided there the previous 17 months.

On June 16, 2023, the family court conducted a hearing on Rose's motion for joint custody and to increase her parenting time. Rose said she obtained employment in February 2023 and earned $32,000 annually. She clarified that each child, once he reached school age, was continuously enrolled in public school while she had custody and was homeschooling them. The children participated in the public school's virtual learning program. She acknowledged encouraging the children to write Bible verses and symbols on the walls of the marital residence with permanent markers. She did as well.

Ayo testified that when he was awarded custody, all three children were behind academically but in his custody were performing closer to their grade level by the end of the 2022-23 school year. He also indicated the boys had behavioral issues that were corrected, and he was receiving no notices of inappropriate behavior from school officials. Ayo's parents were prepared to

testify but did not. Counsel for both parties agreed their testimony would be cumulative of the testimony of their son.

The FOC took the stand and testified that his concerns expressed in his preliminary report were moderated but not eliminated. He asked the family court for time to meet with the children and to file a supplemental report. He did so and filed his report on July 25, 2023.

The FOC's first observation memorialized in the supplemental report was as follows:

> The oldest child presented as very angry. He told this FOC that he had been told by his mother that I had told lies about him and that he did not trust me. The FOC assuaged his concerns, and the child was able to open up a little bit. He continued to present as angry although it was not clear what he was angry about.

The younger two children did not share their older brother's anger.

When the FOC questioned the children about parental influencing before his meeting with them, "[t]hey denied that their father had told them what to say." However, the FOC concluded all three children "had been coached by" Rose and explained his conclusion, as follows:

> The younger two stated that their mother had told them to tell me that they wanted to spend more time with her. When asked further, they admitted that they told this FOC this only because their mother had asked them to tell me. . . . The younger two [children] are comfortable with the way things are now.

Although the oldest child also indicated that "his mother had coached him . . . he really did want more time at his mother's house."

By order entered August 1, 2023, the family court awarded Ayo permanent sole custody, with Rose receiving parenting time every other weekend. The family court denied Rose's subsequent motion to alter, amend, or vacate, and this appeal followed.

## STANDARD OF REVIEW

In child custody cases, "we review the trial court's application of the law *de novo*." *Burgess v. Chase*, 629 S.W.3d 826, 831 (Ky. App. 2021). We review the trial court's factual findings for clear error. *B.C. v. B.T.*, 182 S.W.3d 213, 219 (Ky. App. 2005). A factual finding:

> is clearly erroneous if it is not supported by substantial evidence, which is evidence sufficient to induce conviction in the mind of a reasonable person. . . . If the findings of fact are supported by substantial evidence and if the correct law is applied, a family court's ultimate decision regarding custody will not be disturbed, absent an abuse of discretion. Abuse of discretion implies that the family court's decision is unreasonable or unfair.

*Id.* (citation omitted). "[W]hen there is substantial evidence on both sides of [a] controverted fact it would be invading the province" of the factfinder should the appellate court base its decision on the other party's substantial evidence. *J.P.T. v. Cabinet for Health and Family Servs.*, 689 S.W.3d 149, 158 (Ky. App. 2024)

(internal quotation marks omitted) (quoting *Sesmer v. Barton's Adm'x*, 248 Ky. 15, 57 S.W.2d 1020, 1022 (1933)).

## ANALYSIS

Rose's first argument is that "the entire premise behind awarding [Ayo] sole custody was because [Rose's] religious beliefs may impede her ability to safely and appropriately care for them." (Appellant's Brief 14.) In effect, the argument is that substantial evidence is lacking to support the family court's factfinding other than the evidence of Rose's Christian faith. Because we conclude the family court's findings are supported by substantial evidence independently of the faith-based reasons for her conduct, we need not and cannot consider the constitutional question she raises – that the family court discriminated against her based on her religion in violation of the First Amendment.

Her second argument is that the family court failed to consider KRS 403.315 when it modified the custody order from temporary to permanent sole custody to Ayo. We address that argument first.

## I.  The Family Court Properly Applied KRS 403.315.

Three orders addressed custody in this case. The first two were orders of temporary custody pursuant to KRS 403.280. The third order, that from which Rose brought this appeal, was an order of permanent custody pursuant to KRS 403.270.

-10-

There is a rebuttable presumption "that joint custody and equally shared parenting time is in the best interest of the child," or children, but that presumption is expressly "[s]ubject to KRS 403.315." KRS 403.270(2). That statute says:

> If a domestic violence order is being or has been entered against a party by another party or on behalf of a child at issue in the custody hearing, *the presumption that joint custody and equally shared parenting time is in the best interest of the child shall not apply as to the party against whom the domestic violence order is being or has been entered.* The court shall weigh all factors set out in KRS 403.270 in determining the best interest of the child.

KRS 403.315 (emphasis added). Because a DVO was entered against Ayo in 2021, the family court applied KRS 403.315 at its first opportunity to do so.

When the family court entered an order of temporary custody in April of 2022, the family court explicitly addressed KRS 403.315 and found:

> [T]he domestic abuse previously found by this court has not affected the children and their relationship with their father. The Court has given due consideration to the efforts of [Ayo] toward the completion of the domestic violence treatment program as ordered by this Court. The testimony indicated the children are doing well in school and that there have been no issues with the children. The Court finds that that [sic] the Respondent does not present a danger to the children's mental, moral, physical, or emotional health. Therefore, the Court finds that [Ayo's] parenting time should be expanded.

(R. 76.)

Absent a subsequent DVO, or some new evidence of subsequent domestic violence as defined in KRS 403.720(2), or at the very least newly discovered evidence that the original "domestic violence and abuse has affected the child and the child's relationship to each party," KRS 403.270(2)(g), there is no justification for expending limited judicial resources repeating a process already undertaken.

Responding to Rose's motion to alter, amend, or vacate the August 1, 2023 order, the family court explained that, because Rose failed to produce such evidence as just described, the factor described in KRS 403.270(2)(g) was no longer relevant. We agree.

KRS 403.270(2) directs courts to weigh "all *relevant* factors." (Emphasis added.) Insofar as the family court's custody order fails to reflect that Ayo was not entitled to a presumption of joint custody and equal parenting time originally, we perceive any perceptible error to be harmless. As Ayo points out, "Even if KRS 403.315 would have been applicable, all the court was required to do was undertake the best interest analysis set forth in KRS 403.270, which is precisely what it did." (Appellee's Br. 20.)

Furthermore, the family court alluded to the logical fallacy of Rose's argument. Arguing that she is entitled to the presumption of joint custody because Ayo is not entitled to that presumption is a *non sequitur*. As the family court

-12-

indicated, the presumption of joint custody which Rose claims is rebuttable and Ayo "presented sufficient evidence that rebuts the presumption[.]" (R. 597.) As the family court made clear, "Even if the Court had [re]considered KRS 403.315, the Court's decision would have remained the same." (R. 598.)

**II.        Substantial Evidence Supports the Family Court's Findings; Findings Were Not Clearly Erroneous; and the Correct Law Was Applied to those Facts**.

Rose concedes in her brief the family court "did undertake analysis of the appropriate factors." (Appellant's Br. 17.) Consequently, there is no dispute the family court applied the correct law to the facts. Rose's contention, however, is that the "facts as outlined in the trial court's orders are clearly erroneous and its decision was a manifest abuse of discretion." (*Id.*)

Undoubtedly, there was a fair amount of evidence of Rose's faith. Both parties infused it into the proceedings. However, we cannot agree with Rose that "the [family] court constantly raised [certain] incidents as emblematic of the problem" it had with Rose's faith. (Appellant's Br. 14.) To the contrary, the family court and the FOC did their best to marginalize the impact of Rose's faith on the decision-making process.

The family court carefully distinguished Rose's motivations from Rose's actions and the effect of those actions on the children – these latter considerations were the family court's primary focus. Why Rose acted as she did

was secondarily important, although determining why was an underlying motivation for ordering a psychological evaluation. The family court's compartmentalization of Rose's actions on the one hand and her motives on the other is illustrated by examining the very "incidents" she describes in her brief as emblematic of the family court's error.

Rose was healthy and employable and was even a real estate licensee at one point, and yet she remained voluntarily unemployed for a considerable period of time.[4] "[P]arents have a duty to support their minor children," *Jones v. Hammond*, 329 S.W.3d 331, 340 (Ky. App. 2010), and Rose chose to abdicate that duty. Because the issue before the family court was not child support, the reason for her choice was irrelevant. Her action, or rather inaction, deprived the children the benefit of having both parents provide for their needs and wants. She told the FOC she was relying on her faith in God to see her through, and he dutifully reported it. Rose's reason for not working, however, was irrelevant to the court.

A second such incident she describes was her decision to homeschool the children during the COVID-19 epidemic. The effectiveness of her homeschooling became an issue once there was proof that upon the children's return to in-class learning, Ayo learned they had fallen behind their peers. The

---

[4] Her fourth example of such "incidents" is recast as the fact she "was unemployed for a period of time." This is effectively the same incident.

oldest child reported to the FOC that "while he was home-schooled, he could not [relate] what they studied other than Bible verses." This supports the inference that, notwithstanding the value of teaching the tenets of her faith, such solitary focus deprived the children of learning the primary elements of a traditional lesson plan that the standard curriculum-based education provides.

The third incident Rose noted was her allowing the children to "write Bible passages on the walls" of the marital residence in permanent markers, something she acknowledged doing herself. The focus is not the subject matter of the graffiti, but the fact Rose encouraged her children to deface their own home.

This Court acknowledges, as did the family court itself, that *the fervor* of Rose's faith as identified in the FOC report was one factor in the decision to order a psychological examination. We do not find that inconsistent with the family court's position that Rose's faith itself was not a factor in deciding the custody issue.

The overall assertion that the family court injected Rose's faith into its analysis is not supported by the record. To the contrary, the family court repeated in its orders and from the bench that Rose's faith was not a factor in denying her motion to modify custody and increase parenting time. The court's focus was on how Rose's actions negatively impacted the children. An illustration is found in

the following passage from the order denying Rose's motion to alter, amend, or vacate the order under review:

> If [Rose] cannot provide for herself [because she relies solely on God as she once testified], how can she provide for her children? If [Rose] is only teaching the children about the Bible, how will the children be able to transition to life outside [her] home? . . . [T]he strongest piece of evidence the Court relied upon was how the oldest child was angry with the FOC because of statements [Rose] made to them. The Court relied upon this piece of evidence heavily because it was the strongest example of how [Rose's] self-interested actions were having consequences on the children. Meanwhile, the evidence presented regarding the relationship between the children and [Ayo] showed how [Ayo] is putting the focus on what is best for the children.

The court expressed similar concern regarding Rose's coaching of the children which the FOC documented in his report and which supports the inference the family court drew that Rose "will attempt to manipulate her children in order to get her way." (R. 565.)

The family court rested its decision to deny Rose's motion for joint custody on statutory factors it deemed relevant, specifically KRS 403.270(2)(c), (e), and (f):

> (c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests;
>
> . . . .

-16-

(e) The child's adjustment and continuing proximity to his or her home, school, and community;

(f) The mental and physical health of all individuals involved;

KRS 403.270(2). The family court concluded each of these factors weighed in Ayo's favor. We conclude that substantial evidence, as set forth herein, supports the family court's findings of fact which, applied to these relevant factors, justifies the order denying Rose's motion for joint custody and increased parenting time.

Presuming Rose's evidence was itself enough to support a ruling in her favor, we cannot reverse the family court's decision if the same can be said of the proof Ayo presented. The family court is the factfinder and "may believe the evidence of one witness as against the evidence of several others" because the factfinder "sees the witnesses and hears them testify, observes their demeanor on the witness stand and considers many things in the conduct of a witness which this [appellate] court has no opportunity to consider." *J.P.T.*, 689 S.W.3d at 158. Perhaps more accurately in the era of videotape transcripts, this Court has no authority to consider demeanor even given the technological ability to do so. We find that there was substantial evidence sufficient to support the family court's decision. That is what matters when an appellate court reviews the decision of any trial court acting also as factfinder. *Id.*

We do not address Rose's First Amendment argument because of "the long-standing practice of this Court . . . to refrain from reaching constitutional issues when other, non-constitutional grounds can be relied upon." *Louisville/Jefferson Cnty. Metro Gov't v. TDC Group, LLC*, 283 S.W.3d 657, 660 (Ky. 2009) (internal quotation marks and citation omitted). The non-constitutional grounds upon which we rest our decision to affirm is our conclusion the family court based its decision on substantial evidence and, as Rose acknowledged, applied that evidence to the correct law.

## CONCLUSION

For the foregoing reasons, the Jefferson Circuit Court, Family Division's August 1, 2023, custody order is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Allison Spencer Russell
Louisville, Kentucky

BRIEF FOR APPELLEE:

Armand I. Judah
Louisville, Kentucky